# United States Court of Appeals for the Federal Circuit

---

**NEW MEXICO GARLIC GROWERS COALITION, EL BOSQUE FARM,**
*Plaintiffs-Appellants*

**QINGDAO TIANTAIXING FOOD CO., LTD., SHANDONG JINXIANG ZHENGYANG IMPORT & EXPORT CO., LTD., JINING ALPHA FOOD CO., LTD.,**
*Plaintiffs*

**v.**

**UNITED STATES, ZHENGZHOU HARMONI SPICE CO., LTD., HARMONI INTERNATIONAL SPICE, INC., FRESH GARLIC PRODUCERS ASSOCIATION, CHRISTOPHER RANCH L.L.C., THE GARLIC COMPANY, VALLEY GARLIC, VESSEY AND COMPANY, INC.,**
*Defendants-Appellees*

---

2019-1404

---

Appeal from the United States Court of International Trade in Nos. 1:17-cv-00146-MAB, 1:17-cv-00166-MAB, Judge Mark A. Barnett.

---

Decided:  March 27, 2020

---

ANTHONY LAWRENCE LANZA, BRODIE HUGH SMITH, Lanza & Smith, Irvine, CA, argued for plaintiffs-appellants.

MEEN GEU OH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by JOSEPH H. HUNT, REGINALD THOMAS BLADES, JR., JEANNE DAVIDSON; EMMA T. HUNTER, Office of the Chief Counsel for Trade Enforcement & Compliance, United States Department of Commerce, Washington, DC.

NED H. MARSHAK, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, New York, NY, argued for defendants-appellees Zhengzhou Harmoni Spice Co., Ltd., Harmoni International Spice, Inc. Also represented by BRUCE M. MITCHELL, ALAN LEBOWITZ; JORDAN CHARLES KAHN, KAVITA MOHAN, ANDREW THOMAS SCHUTZ, Washington, DC.

JOHN M. HERRMANN, Kelley Drye & Warren, LLP, Washington, DC, argued for defendants-appellees Fresh Garlic Producers Association, Christopher Ranch L.L.C., The Garlic Company, Valley Garlic, Vessey and Company, Inc. Also represented by MICHAEL J. COURSEY, JOSHUA MOREY.

————————————

Before MOORE, SCHALL, and TARANTO, *Circuit Judges.*

SCHALL, *Circuit Judge.*

This is an antidumping case. It arises out of the 21st administrative review ("AR 21") of the antidumping duty order on fresh garlic from the People's Republic of China ("China" or "PRC"). On appeal before us is the decision of the United States Court of International Trade sustaining the Department of Commerce's ("Commerce") final results and partial rescission of the administrative review. *See New Mexico Garlic Growers Coalition v. United States*, 352

F. Supp. 3d 1281 (Ct. Int'l Trade 2018) ("*NMGGC*"); *Fresh Garlic from the People's Republic of China*, 82 Fed. Reg. 27,230 (Dep't of Commerce June 14, 2017) (final results and partial rescission of the 21st antidumping duty admin. review; 2014–2015) ("*Final Results*"). For the reasons set forth below, we affirm the decision of the Court of International Trade.

BACKGROUND

I.

The antidumping law provides for the assessment of duties on foreign merchandise being, or likely to be, sold in the United States "at less than its fair value." 19 U.S.C. § 1673.[1] An antidumping investigation is initiated when a domestic industry petitions Commerce to investigate allegations of such sales. *Sango Int'l, L.P. v. United States*, 484 F.3d 1371, 1373 (Fed. Cir. 2007); 19 U.S.C. §§ 1673a(b), 1677(9)(C). At the end of the investigation, if Commerce and the U.S. International Trade Commission have made the requisite determinations, Commerce publishes an order that directs U.S. Customs and Border Protection to assess antidumping duties on imports of goods covered by the investigation. 19 U.S.C. § 1673e(a); *Solar World Ams., Inc. v. United States*, 910 F.3d 1216, 1220 (Fed. Cir. 2018). Each year after the order is published, if Commerce receives a request for an administrative review of the order, it reviews and determines the amount of any antidumping duty. 19 U.S.C. § 1675(a)(1).

Commerce calculates a "dumping margin" for a particular product subject to an antidumping duty order or a

---

[1]    In June of 2015, Congress amended various statutes relating to antidumping. *See* Trade Preferences Extension Act of 2015, Pub. L. No. 114–27, §§ 501–07, 129 Stat. 362, 383–87 (2015). The amendments do not affect this appeal.

subsequent review.  19 U.S.C. § 1677(35)(A).  The dumping margin is equal to the amount by which the normal value (the price a producer charges in its home market) exceeds the export price (the price of the product in the United States) or constructed export price of the subject merchandise.  *Id.*; *U.S. Steel Corp. v. United States*, 621 F.3d 1351, 1353 (Fed. Cir. 2011).  The antidumping duty rate is equal to the dumping margin.  *Changzhou Hawd Flooring Co., Ltd. v. United States*, 947 F.3d 781, 788 ("The antidumping duty order 'directs customs officers to assess an antidumping duty equal to the amount' of the dumping margin within a certain period.") (quoting 19 U.S.C. § 1673e(a)(1)).

Requests for administrative reviews of antidumping duty orders are governed by statute and regulation.  As noted, the statute providing for administrative reviews is 19 U.S.C. § 1675(a)(1).  It reads in relevant part as follows:

> At least once during each 12-month period . . . the administering authority, if a request for [a] review has been received and after publication of notice of such review in the Federal Register, shall . . . review[] and determine . . . the amount of any antidumping duty.

Commerce has promulgated a regulation implementing § 1675(a)(1).  The regulation is set forth at 19 C.F.R. § 351.213(b).  It reads in relevant part as follows:

> (b) Request for administrative review.

> (1) Each year during the anniversary month of the publication of an antidumping . . . duty order, a domestic interested party . . . may request in writing that [Commerce] conduct an administrative review under [19 U.S.C. § 1675(a)(1)] of specified individual exporters or producers covered by an order . . . if the requesting person states why the person desires [Commerce] to review those particular exporters or producers.

(2) During the same month, an exporter or producer covered by an order . . . may request in writing that [Commerce] conduct an administrative review of only that person.

Paragraph (d) of 19 C.F.R. § 351.213 addresses rescission of an administrative review.  Specifically, 19 C.F.R. § 351.213(d)(1) provides, in pertinent part:

Withdrawal of request for review.  [Commerce] will rescind an administrative review under this section, in whole or in part, if a party that requested a review withdraws the request within 90 days of the date of publication of notice of initiation of the requested review.

Section 1677(9) of 19 U.S.C. defines the term "interested party" as it relates to the imposition of antidumping duties.  Relevant to this case, subsection (9)(C) states that "interested party" means "a manufacturer, producer, or wholesaler in the United States of a domestic like product." Commerce has promulgated a regulation setting forth definitions for many technical terms applicable to antidumping proceedings.  *See* 19 C.F.R. § 351.102.  Paragraph 17 of 19 C.F.R. § 351.102(b) defines "[d]omestic interested party" to include an interested party as set forth in 19 U.S.C. § 1677(9)(C).

Pursuant to 19 U.S.C. § 1677f-1(c)(1), when Commerce determines dumping margins during administrative reviews, it must "determine the individual weighted average dumping margin for each known exporter and producer of the subject merchandise."  19 U.S.C. § 1677f-1(c)(1).[2]  The

---

[2]    The "weighted average dumping margin" is "the percentage determined by dividing the aggregate dumping margins determined for a specific exporter or producer by the aggregate export prices and constructed export prices of such exporter or producer."  19 U.S.C. § 1677(35)(B).

statute provides an exception to this requirement, however, when "it is not practicable . . . because of the large number of exporters or producers involved in the investigation or review." 19 U.S.C. § 1677f-1(c)(2). In that case, Commerce may determine dumping margins for a "reasonable number of exporters or producers by limiting its examination to– (A) a sample of exporters, producers, or types of products that is statistically valid . . . , or (B) exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that can be reasonably examined." *Id.*

In antidumping duty proceedings involving merchandise from a nonmarket economy country, Commerce presumes all respondents are government-controlled and therefore subject to a single country-wide rate. *Ad Hoc Shrimp Trade Action Comm. v. United States*, 802 F.3d 1339, 1353 (Fed. Cir. 2015).[3] A respondent may rebut this presumption and obtain a "separate rate" by establishing the absence of both *de jure* (in law) and *de facto* (in fact) government control over its export activities. *See id.*; *Michaels Stores, Inc. v. United States*, 766 F.3d 1388, 1392 (Fed. Cir. 2014). China is a nonmarket economy country. *See Final Results*, 82 Fed. Reg. at 27,230, 27,231–32; *Michaels Stores*, 766 F.3d at 1392. Relevant here, exporters from China that are not eligible for a separate rate are said to be part of the "PRC-wide entity." *See Final Results*, 82 Fed. Reg. at 27,230, 27,232; *Michaels Stores*, 766 F.3d at 1392. The term "PRC-wide entity" refers to all companies within China that are considered to be subject to

---

[3]    A "nonmarket economy country" is "any foreign country that [Commerce] determines does not operate on market principles of cost or pricing structures, so that sales of merchandise in such country do not reflect the fair value of the merchandise." 19 U.S.C. § 1677(18)(A).

government control.  *See Michaels Stores*, 766 F.3d at 1390; J.A. 6302.

## II.

In 1994, Commerce issued an order imposing anti-dumping duties on fresh garlic from China.  *See Anti-dumping Duty Order: Fresh Garlic from the People's Republic of China*, 59 Fed. Reg. 59,209 (Dep't of Commerce Nov. 16, 1994) ("*AD Order*").  Commerce calculated a 376.67 percent weighted-average antidumping duty margin for the PRC-wide entity, which was later converted to a $4.71 per kilogram rate.  *AD Order*, 59 Fed. Reg. at 59,210; J.A. 698.  In November of 2015, Commerce published a notice informing interested parties of the opportunity to request an administrative review of the *AD Order* for the period of review ("POR") November 1, 2014, through October 31, 2015.  *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Req. Admin. Review*, 80 Fed. Reg 67,706, 67,707 (Dep't of Commerce Nov. 3, 2015).

In response to its notice, Commerce received requests for review from multiple entities.  Zhengzhou Harmoni Spice Co., Ltd. ("Harmoni"), a producer and exporter of fresh garlic from China, requested a review of itself under 19 C.F.R. § 351.213(b)(2).  *NMGGC*, 352 F. Supp. 3d at 1287; J.A. 151.  Pursuant to 19 C.F.R. § 351.213(b)(1), two other entities also requested a review of Harmoni.  The first entity was the Fresh Garlic Producers Association ("FGPA"), a California association comprised of individual members Christopher Ranch, LLC, The Garlic Company, Valley Garlic, and Vessey and Company, Inc.  *See NMGGC*, 352 F. Supp. 3d at 1287 & n.2.  The second entity was the

New Mexico Garlic Growers Coalition ("NMGGC"). *See id.* at 1287.[4]

NMGGC's request for review of Harmoni was filed November 28, 2015 by attorney Joey Montoya of the law firm of Hume & Associates. Mr. Montoya requested that a review be conducted "on behalf of" NMGGC. J.A. 144. NMGGC represented that it was composed of Stanley Crawford, owner and operator of El Bosque Farm of Dixon, New Mexico; and Avrum Katz, owner and operator of Boxcar Farm of Penasco, New Mexico. J.A. 143. The request concluded with a statement by Mr. Montoya indicating that he would be handling the case independent from other attorneys at his firm for the purpose of avoiding the appearance of a conflict of interest. J.A. 144. Subsequently, Robert Hume of Hume & Associates entered an appearance in the matter in order to represent the interests of Qingdao Tiantaixing Food Co., Ltd. ("QTF"), a Chinese garlic producing entity. *NMGGC*, 352 F. Supp. 3d. at 1299.

In NMGGC's request for review, Mr. Montoya requested that Commerce "conduct an administrative review of fresh garlic entries sold to the U[nited] S[tates]" by Harmoni during the POR, in order to "determine, if any, the amount of dumping duties that may be assessed on [its] entries." J.A. 143–44. Addressing the "domestic interested party" requirement of § 351.213(b)(1), Mr. Montoya stated that the members of NMGGC were "producers or wholesalers within the United States of a domestic like product in accordance with 19 U.S.C. § 1677(9)(C) . . . ." J.A. 144.

---

[4] The FGPA and its individual members requested a review of Chinese garlic exporters, including Harmoni. *See NMGGC*, 352 F. Supp. 3d at 1287; J.A. 154–63. NMGGC requested a review of Harmoni and Jinxiang Jinma Fruits Vegetables Products Co., Ltd., a Harmoni affiliate. Commerce selected only Harmoni as a mandatory respondent. *NMGGC*, 352 F. Supp. 3d at 1298–99 & n.25; J.A. 143–44.

NMGGC's request for review was accompanied by certifications of Mr. Crawford, Mr. Katz, and Mr. Montoya. Referring to the request for review, each certification contained the following statement: "I certify that the information contained in this submission . . . is accurate and complete to the best of my knowledge." J.A. 145–47.

On December 3, 2015, Mr. Montoya, on behalf of NMGGC, made a further submission to Commerce. J.A. 171. In his submission, Mr. Montoya stated, "[t]he NMGGC wants to take this opportunity to express why investigating Harmoni is important to the ability of NMGGC and to similar garlic producers throughout New Mexico to compete in the fresh garlic market." J.A. 172. Mr. Montoya averred that, over the course of the 11th through 20th administrative reviews ("ARs"), Harmoni and FGPA had engaged in a course of conduct and strategy that enabled Harmoni to escape administrative review and thus receive a zero dumping margin and a zero cash deposit rate. J.A. 172–74.[5] Harmoni and the FGPA's strategy, Mr Montoya alleged, J.A. 175, involved threatening Mr. Crawford:

---

[5]    According to NMGGC's submission to Commerce, Harmoni was last subject to a review in the 10th AR, in which Harmoni received a zero dumping margin and a zero cash deposit rate. J.A. 173, *see* Appellant's Br. 10–11. Further, according to NMGGC, in the 11th through 20th ARs, FGPA requested that the antidumping order be reviewed and that the review include Harmoni, but FGPA then withdrew its review requests under 19 C.F.R. § 351.213(d)(1). J.A. 173; *see* Appellant's Br. 11–12. Similarly, for the 12th and 15th ARs, NMGGC asserted, Harmoni requested reviews of itself but then withdrew its requests. J.A. 173. NMGGC contended that this allowed Harmoni to "escape[] review" and "raise[d] an inference of collusion." *Id.* at 173–74. NMGGC contends that a withdrawn exporter's duty rate defaults to the last rate the exporter received in a

review in which the exporter was not withdrawn. *See* NMGGC Br. 42. In the case of Harmoni, this would be the zero dumping margin and zero cash deposit rate from the 10th AR, NMGGC asserts. *See* J.A. 173. NMGGC's argument appears to be based on Commerce's "[a]utomatic assessment of antidumping and countervailing duties if no review is requested" under 19 C.F.R. § 351.212(c). That regulation provides that if no timely request for an administrative review is received, antidumping duties are to be assessed "at rates equal to the cash deposit of, or bond for, estimated antidumping duties . . . required on that merchandise." 19 C.F.R. § 351.212(c); *Fresh Garlic From the People's Republic of* China, 81 Fed. Reg. 89,050, 89,052 (Dep't of Commerce Dec. 9, 2016) (preliminary results and partial rescission of the 21st antidumping duty admin. review; 2014–2015) ("*Preliminary Results*") ("For the companies for which this review is rescinded, antidumping duties shall be assessed at rates equal to the cash deposit of estimated antidumping duties required at the time of entry, or withdrawal from warehouse, for consumption, in accordance with 19 CFR 351.212(c)(1)(i)."); *see Mitsubishi Elecs. Am., Inc. v. United States*, 44 F.3d 973, 976–77 (Fed. Cir. 1994) (addressing the prior version of 19 C.F.R. § 351.212 and explaining that where no party makes a request for an administrative review, Commerce instructs customs officers to automatically assess duties at the estimated rate). NMGGC contends that by AR 21, Harmoni accounted for a large percentage of the fresh garlic shipped from China to the United States, which it "was dumping. . . in massive quantities." NMGGC Br. 11. Accordingly, by submitting requests and withdrawing them, NMGGC contends, Harmoni was able to avoid Commerce's finding in AR 21, noted below, that Harmoni was not eligible for a separate rate and was subject to the PRC-wide entity rate. *See NMGGC*, 352 F. Supp. 3d at 1288.

> During the 20th AR, the FGPA and Harmoni vigorously contested the standing of Stanley Crawford, the owner and operator of El Bosque Farm, as a domestic interested party. . . . During the 20th AR Mr. Crawford was scared off and withdrew his request [for administrative review] after private investigators were sent to inspect his facility and pry into his business.

J.A. 174–75.

Commerce initiated AR 21 on January 7, 2016. *NMGGC*, 352 F. Supp. 3d at 1287. Subsequently, on March 8, 2016, NMGGC notified Commerce that Mr. Montoya was withdrawing from representation of NMGGC and that Hume & Associates would continue to represent NMGGC. *Id.* at 1299. The following day, Mr. Hume entered an appearance on behalf of NMGGC. *Id.*

In March of 2016, FGPA and Harmoni withdrew their requests for review of Harmoni pursuant to 19 C.F.R. § 351.213(d)(1). *Id.* at 1287; J.A. 445; J.A. 580–82.[6] This left Harmoni still subject to review pursuant to NMGGC's pending request for review, however. J.A. 5537–38.

On April 8, 2016, Commerce issued a set of questions to NMGGC in order to determine whether its members were producers or wholesalers of fresh garlic and, thus, domestic interested parties that could request an administrative review. *NMGGC*, 352 F. Supp. 3d at 1299. Commerce requested information regarding the quantity of fresh garlic produced during the POR, the total production value of the garlic, the total amount of investment in garlic production, and the employment numbers for the POR, as well as information regarding other costs and activities related to

---

[6]    Harmoni's withdrawal was submitted on behalf of Harmoni and its U.S. affiliate, Harmoni International Spice, Inc. J.A. 445.

fresh garlic production in the United States. *Id.* at 1299–300. NMGGC provided its members' responses to the questions on April 15, 2016. *Id.* at 1300. In its responses, NMGGC claimed that "[g]arlic farmers in the United States cannot compete with the Chinese garlic funneled into the United States by Harmoni that is exempt from [Commerce's] administrative reviews." *Id.* at 1311. Thereafter, on June 3, 2016, Commerce issued a memorandum in which it found that NMGGC and its individual members were domestic producers of fresh garlic and thus had standing to request an administrative review of Harmoni under 19 C.F.R. § 351.213(b)(1). *Id.*; J.A. 5537–41. At the same time, Commerce declined Harmoni's request to suspend NMGGC's review of Harmoni. *See* J.A. 5541.

In arriving at its decision regarding NMGGC's and its members' status as domestic garlic producers, Commerce relied on information provided by Mr. Crawford and Mr. Katz in their questionnaire responses regarding the output, sales, investments, and labor expenses of the members of NMGGC. J.A. 5540. Commerce also relied on a statement in Mr. Katz's questionnaire response with respect to NMGGC's stake in the proceeding. The statement read:

> The price of my garlic is absolutely affected by changes in imported garlic price. Cheap, imported Chinese garlic is used to set price. People at my market stand ask us all the time why the supermarket prices are so much cheaper. It is not unusual for someone to place their garlic on the scale, hear our price, and walk away.

J.A. 5541. At the conclusion of the June 3 memorandum, Commerce noted that "[t]he interested parties in this review have made numerous arguments, including various 'fraud' arguments by Harmoni, regarding the status of the NMGGC members." J.A. 5541. Commerce stated that it intended to address those arguments in full in the preliminary results of the administrative review. *Id.*

Commerce issued its preliminary results and corresponding memorandum on December 5, 2016. *See NMGGC*, 352 F. Supp. 3d at 1300; J.A. 6289; *Preliminary Results*, 81 Fed. Reg. at 89,052. In its preliminary results memorandum, Commerce continued to find that NMGGC's members were domestic producers of fresh garlic, with standing to request administrative reviews of foreign exporters. J.A. 6296. In addition, Commerce stated, "[t]here is no indication that the NMGGC members have fabricated any of the evidence supporting their claims to be domestic garlic producers." J.A. 6295. Accordingly, Commerce "preliminarily determine[d]" not to rescind its review of Harmoni, as Harmoni had requested. *Id.* at 6294, 6296. Commerce added, however, that the parties recently had made "a number of submissions" which Commerce had not had time to review for the preliminary results. *Id.* at 6296. As for the antidumping duty that would apply to Harmoni, Commerce preliminarily determined that Harmoni was not eligible for a separate rate and should be considered to be part of the PRC-wide entity. *NMGGC*, 352 F. Supp. 3d at 1288; J.A. 6304–05; *Preliminary Results*, 81 Fed. Reg. at 89,050. Commerce made this preliminary determination because it determined that Harmoni had withheld requested information, failed to meet established deadlines, significantly impeded the proceeding, and failed to cooperate to the best of its ability. *NMGGC*, 352 F. Supp. 3d at 1288; J.A. 6304–05.

Shortly after Commerce issued its preliminary results, on December 14, 2016, Mr. Katz withdrew from NMGGC. *NMGGC*, 352 F. Supp. 3d at 1300; J.A. 6364. Subsequently, on February 10, 2017, a letter from Mr. Katz was submitted to Commerce. The letter contained various allegations pertaining to NMGGC, its other member, Mr. Crawford, and its attorney, Mr. Hume. *NMGGC*, 352 F. Supp. 3d at 1300; J.A. 6719–23. Mr. Katz stated that his farm withdrew from AR 21 to show a "withdrawal of support for what" he had come to view as a "fraudulent and

misleading scheme" by Mr. Hume and Mr. Crawford.  J.A. 6719; J.A. 6720.  Among other things, Mr. Katz alleged that Mr. Hume had "intentionally misled" him on the nature and purpose of AR 21.  *NMGGC*, 352 F. Supp. 3d at 1300; J.A. 6720.  Mr. Katz asserted that he had been unaware that Mr. Hume had been simultaneously representing Chinese clients, and alleged that Mr. Hume had used his (Mr. Katz's) farm as a "puppet[] to petition the government for his Chinese clients."  *NMGGC*, 352 F. Supp. 3d at 1300; J.A. 6721.  Mr. Katz further alleged that Mr. Hume was compensated in the amount of $100,000 by his Chinese clients to initiate a review request with respect to Harmoni, and that Mr. Crawford received $50,000 and was promised garlic harvesting equipment for his participation in the request.  *NMGGC*, 352 F. Supp. 3d at 1300; J.A. 6721–22.  Mr. Katz indicated that he had expected he and his farm would receive similar payment in exchange for his participation.  *NMGGC*, 352 F. Supp. 3d at 1301; J.A. 6722.  Moreover, contradicting his earlier statement in the questionnaire response, Mr. Katz stated:

> Boxcar Farm's fundamental problem is not competition from cheap garlic coming in from China.  Our problem was, and is, a lack of capital for infrastructure to increase our production.  [Mr.] Hume and [Mr.] Crawford led us to believe that if we went along with their narrative and forced Harmoni out of business, money would come from China to take care of some of those infrastructure problems.

J.A. 6723.

After receiving comments from the parties about Mr. Katz's allegations and holding a public hearing, Commerce issued a decision memorandum.  *NMGGC*, 352 F. Supp. 3d at 1301.  Dated June 17, 2017, the memorandum addressed the additional evidence that had been placed in the record.  Mem. from Gary Taverman, Deputy Asst. Sec'y for Antidumping & Countervailing Duty Operations, to Ronald K.

Lorentzen, Acting Asst. Sec'y for Enforcement and Compliance, *Issues and Decision Memorandum for the Final Results of Antidumping Duty Admin. Review: Fresh Garlic from the People's Republic of China; 2014–2015*, (Dep't of Commerce June 7, 2017) ("*Final Results I & D Memorandum*"), J.A. 9111–47. In the memorandum, Commerce stated that it had received additional evidence that "undermined the veracity of all of the NMGGC's submissions to the Department, including the basis for its review request of Harmoni and the production and business information of NMGGC." *Id.* at 18, J.A. 9128. Commerce thus determined that, because NMGGC lacked credibility, its request for review of Harmoni was "illegitimate *ab initio*." *Id.* Commerce therefore stated that it was rescinding the administrative review with respect to Harmoni. *Id.*; *see Final Results*, 82 Fed. Reg. at 27,230. As a result of this action, Harmoni was no longer subject to review in AR 21 because, as noted, its own request for review, as well as that of the FGPA, had been withdrawn in March of 2016.

In its decision memorandum, Commerce noted three specific factual claims by NMGGC and Mr. Hume that Commerce found were "contradicted by other, more reliable record evidence." *Final Results I & D Memorandum* at 18, J.A. 9128. Those were (1) the claim that Chinese exporters/businessmen were not involved in NMGGC's review request in AR 21, *id.* at 18–20, J.A. 9128–30; (2) the claim that neither the members of NMGGC nor Mr. Hume received direct or indirect compensation for their participation in AR 21, *id.* at 20–21, J.A. 9130–31; and (3) the claim that Mr. Crawford withdrew his request in the 20th AR because he was intimidated by a private investigator sent by Harmoni, *id.* at 21, J.A. 9131. The first two claims were made when NMGGC and Mr. Crawford filed responses to Mr. Katz's letter with Commerce. *See, e.g.*, J.A. 7175 (NMGGC stating "[t]hese declarations confirm that the NMGGC was not financed by any Chinese entity; there were no promises of any future compensation; and, there

was never any promise of a $3 million investment."); J.A. 6378 (Mr. Crawford declaring, "I have received no compensation for my participation in AR 21."); J.A. 7196 (Mr. Hume declaring, "I was not compensated, nor did I expect any compensation, for my time or expertise in representing the NNMGGC [sic] in the Garlic 21 AR."). The third claim was made in Mr. Montoya's December 3, 2015 submission on behalf of NMGGC noted above, relating to alleged threats against Mr. Crawford. J.A. 174–75; *see also* J.A. 7169–70; J.A. 6377.

Commerce summarized its position as follows:

[T]he question of NMGGC's status as "a domestic interested party" is fundamental to its ability to request an administrative review of a Chinese exporter. We note that the record of this review shows that Mr. Crawford and Mr. Hume have misrepresented critical information regarding the circumstances surrounding the NMGGC's request to review Harmoni in this and prior administrative reviews. As a result of their material misrepresentations on the record of this review, the Department has concluded that the NMGGC and Mr. Crawford's inability to provide complete and accurate responses taint all of the statements and information that they have submitted on the record of this review. Most importantly, the numerous contradictions in the record evidence taint the April 15, 2016, questionnaire response in which the NMGGC provided its production and business information to support its claim for "domestic interested party" status. Because we determine that the entirety of the NMGGC's information, including its garlic production information, is unusable, we find that the NMGGC has failed to demonstrate that it is a domestic interested party. As such, there is no valid review request of Harmoni.

*Final Results I & D Memorandum* at 23, J.A. 9133.[7]

## III.

NMGGC and El Bosque Farm (from this point forward, collectively, "NMGGC") timely challenged Commerce's final decision in the Court of International Trade. The court exercised jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c).

Before the Court of International Trade, NMGGC moved for judgment on the agency record. In so doing, it challenged Commerce's rescission of the Harmoni review. It did so on two grounds. First, it argued that Harmoni and the FGPA should not have been allowed to withdraw their request for review of Harmoni under 19 C.F.R. § 351.213(d)(1). In making this argument, NMGGC contended that 19 C.F.R. § 351.213(d)(1) is invalid because it is contrary to the provisions of 19 U.S.C. § 1675(a)(1) and (2) and § 1677f-1(c)(1). *NMGGC*, 352 F. Supp. 3d. at 1301, 1303–05; Reply of Pls. NMGGC and El Bosque Farm to Resps. of Def. and Def.-Intervenors to Pls.' Mot. for J. upon the Agency R. at 6–15, *New Mexico Garlic Growers Coalition and El Bosque Farm v. United States*, No. 17-cv-00146, Doc. 71 (Ct. Int'l Trade April 30, 2018) ("*NMGGC's Mot. for J. Reply Br.*"). According to NMGGC, once a review is

---

[7] Commerce's decision memorandum also noted that, in the course of the review, QTF provided false or incomplete information regarding its affiliations and failed to act to the best of its ability. *Final Results I & D Memorandum* at 31, J.A. 9141. Commerce accordingly collapsed QTF and its affiliated companies and treated them as a single entity ("the QTF-entity"), applied adverse facts available ("AFA"), denied the QTF-entity a separate rate, and assigned it the PRC-wide entity rate of $4.71 per kilogram. *Id.* at 30–36, J.A. 9140–46; *Final Results*, 82 Fed. Reg. 27,232.

initiated of any producer or exporter, 19 U.S.C. § 1675(a)(1), (2), and § 1677f-1(c)(1) require that each entry of merchandise from all producers and exporters from the subject country be reviewed, regardless of whether a request is made for the particular producer/exporter of the entry. *NMGGC*, 352 F. Supp. 3d. at 1304; *see NMGGC's Mot. for J. Reply Br.* at 7–9. NMGGC urged that Commerce thus does not have authority under the statutes to conduct a review "in part." *NMGGC's Mot. for J. Reply Br.* at 11. That, however, NMGGC reasoned, is what the regulation allows. Hence, it is contrary to law. *Id.* at 11–12. Second, NMGGC challenged the factual findings and credibility determinations supporting Commerce's determination that NMGGC's request for review of Harmoni was "illegitimate *ab initio*," the determination which led Commerce to rescind the review of Harmoni insofar as it had been based on NMGGC's request. *Final Results I & D Memorandum* at 18, J.A. 9128; *NMGGC*, 352 F. Supp. 3d at 1288.

In its opinion issued November 26, 2018, the Court of International Trade sustained the *Final Results*. *NMGGC*, 352 F. Supp. 3d at 1286. Addressing NMGGC's first argument, the court determined that 19 C.F.R. § 351.213(d)(1) is a reasonable construction of 19 U.S.C. § 1675(a)(1) under *Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984). *Id.* at 1303–04. Allowing Commerce to rescind a review when a request is withdrawn, the court noted, is consistent with the legislative intent behind amendments made to § 1675(a) in 1984 to reduce the administrative burden when there is little to no interest in a review. *Id.* The court also rejected NMGGC's argument that 19 U.S.C. §§ 1675(a) and 1677f-1(c)(1) require Commerce to review each entry of merchandise for *all* exporters and producers when it conducts a review. *Id.* at 1304–05. The Court thus turned aside NMGGC's challenge to the regulation.

The Court of International Trade next addressed Commerce's factual findings and credibility determinations

relating to NMGGC's request for review.  The court analyzed each of the three factual claims by NMGGC that Commerce found to be misrepresentations, as well as "additional concerns" of Commerce.  *Id.* at 1306–12.[8]  The court found Commerce's credibility determinations and factual findings to be supported by substantial evidence.  *Id.*  Citing *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1361 (Fed. Cir. 2008) ("*TKS*"), for the proposition that Commerce "possesses inherent authority to protect the integrity of its yearly administrative review decisions," the court affirmed Commerce's decision to declare NMGGC's review request illegitimate *ab initio* and therefore rescind the Harmoni review.  *NMGGC*, 352 F.3d at 1312.[9]

---

[8]    The "additional concerns" included contradictions in NMGGC's claim that "[g]arlic farmers in the United States cannot compete with . . . Chinese garlic" and Mr. Katz's statements that his farm's "fundamental problem is not competition from cheap garlic coming in from China."  *NMGGC*, 352 F. Supp. 3d at 1311.  The concerns also included "serious problems with the certifications" that NMGGC had submitted, such as allegations that Mr. Katz had not personally signed or authorized counsel to sign certifications that were submitted on his behalf.  *Id.*

[9]    In addition, the Court of International Trade addressed a claim by NMGGC that Commerce had abused its discretion in failing to request that the Department of Justice investigate and prosecute Harmoni and FGPA for "engag[ing] in collusion" and "effectively establish[ing] a monopoly in trade for Chinese garlic."  *NMGGC*, 352 F. Supp. 3d at 1312.  These claims pertained to NMGGC's allegations that Mr. Katz and a member of the support staff at Hume & Associates had filed statements on the record that included false information.  Mot. of Pls.' NMGGC and El Bosque Farm for J. on the Agency R. at 13–14, 38–39,

NMGGC has timely appealed.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

DISCUSSION

I.

We review a decision of the Court of International Trade *de novo*, applying anew the standard used by that court in reviewing the decision of Commerce.  *ABB Inc. v. United States*, 920 F.3d 811, 820 (Fed. Cir. 2019).  That means that we uphold Commerce's determinations unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  *Id.* (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)).  Although we review a decision of the Court of International Trade *de novo*, we give great weight to the informed opinion of the court, and it is nearly always the starting point of our analysis.  *Id.*

---

*New Mexico Garlic Growers Coalition and El Bosque Farm v. United States*, No. 17-cv-00146, Doc. 42 (Ct. Int'l Trade Feb. 1, 2018).  The court found this argument was not fully developed and therefore waived.  *NMGGC*, 352 F. Supp. 3d at 1312.

The Court of International Trade also addressed a challenge to Commerce's final decision by QTF and two separate rate respondents, Shandong Jinxiang Zhengyang Import & Export Co., Ltd. and Jining Alpha Food Co., Ltd.  *Id.* at 1286.  The court determined that substantial evidence supported Commerce's finding that QTF had provided false or incomplete information regarding its affiliations, and that Commerce's determination to collapse QTF and its affiliates into the QTF-entity, its application of AFA, and its denial of a separate rate for the QTF-entity were supported by substantial evidence and otherwise in accordance with law.  *Id.* at 1298.  This ruling is not before us.

## II.

NMGGC makes three arguments on appeal. First, it argues that Commerce erred when it rescinded the administrative review of Harmoni that NMGGC requested. NMGGC contends that Commerce's decision is unsupported by substantial evidence and incorrect as a matter of law because it is undisputed that Mr. Crawford is a garlic grower; therefore, NMGGC is an "interested party" under 19 U.S.C. § 1677(9)(C). NMGGC Br. 29–35. NMGGC contends that Commerce's findings of misrepresentations on behalf of NMGGC are not relevant to whether Mr. Crawford is a garlic farmer and, accordingly, not relevant to his standing to request a review. NMGGC Br. 21; Reply Br. 3–4. At oral argument, counsel for NMGGC also argued that the misrepresentations addressed by Commerce were not made in the review requests themselves, and thus, were not relevant to standing (whether Mr. Crawford is a garlic producer). Oral arg. 6:12–51, 12:28–13:21, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2019-1404.mp3 (Nov. 4, 2019).

NMGGC also contends that Commerce exceeded its authority when it declared the review of Harmoni "illegitimate *ab initio*." In making this argument, NMGGC argues that *TKS* is distinguishable or, alternately, that this case introduces an exception to Commerce's inherent authority as set forth in *TKS*. Reply Br. 17–18.

Second, NMGGC argues, as it did before the Court of International Trade, that by allowing a party to request a review and then withdraw the request (resulting in Commerce's rescission of the review), 19 C.F.R. § 351.213(d)(1) violates 19 U.S.C. § 1675(a) and § 1677f-1. NMGGC Br. 38–49.

Third, NMGGC renews its contention that Harmoni and FGPA have engaged in a sham by repeatedly requesting, and then withdrawing, requests for reviews of Harmoni. NMGGC Br. 49–52; Reply Br. 30–31. Specifically,

NMGGC argues that Harmoni and FGPA consistently have failed to state the true reason "[w]hy the person desires [Commerce] to review" Harmoni, as required by 19 C.F.R. § 351.213(b)(1).  NMGGC Br. 50–51.

### III.

Addressing NMGGC's first argument, the government, FGPA, and Harmoni (collectively, "appellees") contend that the Court of International Trade correctly held that Commerce has inherent authority to protect the integrity of its proceedings under *TKS* and *Home Products, International, Inc. v. United States*, 633 F.3d 1369, 1377 (Fed. Cir. 2011). United States' Br. 37–38, FGPA Br. 19–22; Harmoni Br. 39–41.  Appellees urge that Commerce connected its credibility decision to standing since 19 C.F.R. § 351.213(b)(1) requires that a domestic interested party explain "why" it "desires [Commerce] to review [] particular exporters or producers."    United States' Br. 40 (quoting 19 C.F.R. § 351.213(b)(1)); Harmoni Br. 39–41 (same).

Turning to NMGGC's second argument, appellees respond that 19 C.F.R. § 351.213(d) does not violate 19 U.S.C. § 1675(a) or § 1677f-1.  Specifically, appellees contend that § 1675(a) does not say that Commerce's reviews must include all exporters and that § 1677f-1(c)(2) provides an exception to the requirement that a dumping margin be determined for all exporters and producers. *See* United States' Br. 27–31.[10]

---

[10]    As noted, the statute provides that Commerce need not "determine the individual weighted average dumping margin for each known exporter and producer of the subject merchandise," 19 U.S.C. § 1677f-1(c)(1), when "it is not practicable . . . because of the large number of exporters or producers involved in the investigation or review," 19 U.S.C. § 1677f-1(c)(2).

Appellees respond to NMGGC's "sham" argument in various ways. The government contends that this argument was waived, but that, nonetheless, NMGGC has not established unlawful action on the part of Harmoni and FGPA. United States' Br. 43–44. FGPA argues that if it wanted to ensure Harmoni was not the subject of a review, it could have chosen not to file a review request for Harmoni in the first place. By filing a request, FGPA argues, it was making a "concerted decision to request reviews for the broadest possible universe of Chinese respondents and then narrow the focus of its request for administrative reviews to those Chinese entities that are priorities for focused enforcement." FGPA Br. 41–42. For its part, Harmoni argues that when it and FGPA filed review requests in AR 21 and prior reviews, they had no agreement to subsequently withdraw the requests. Harmoni Br. 56. Further, Harmoni contends it did nothing wrong by filing and subsequently withdrawing review requests. *Id.*

IV.

Pursuant to 19 C.F.R. § 351.213(b)(1) a "domestic interested party" may request that Commerce conduct an administrative review under 19 U.S.C. § 1675(a)(1) of specified individual exporters or producers covered by an antidumping duty order "if the requesting person states why the person desires [Commerce] to review those particular exporters or producers." Pertinent here are the requirements (1) that the requesting party be a "domestic interested party"; and (2) that the requesting party set forth "why" it desires Commerce to review a particular entity.

As seen, Commerce rescinded NMGGC's review due to NMGGC's misrepresentations, which Commerce found "taint all of the statements and information that [NMGGC has] submitted on the record." J.A. 9133. NMGGC does not appear to contend that Commerce's determinations regarding the three misrepresentations made by NMGGC

are not supported by substantial evidence or otherwise are not in accordance with law. *See* Reply Br. 3. Again, these misrepresentations were (1) the claim that Chinese exporters/businessmen were not involved in NMGGC's review request in AR 21; (2) the claim that neither the members of NMGGC nor Mr. Hume received direct or indirect compensation for their participation in AR 21; and (3) the claim that Mr. Crawford withdrew his request in the 20th AR because he was intimidated by a private investigator sent by Harmoni.

NMGGC's complaint before the Court of International Trade relied upon Mr. Crawford's status as a "domestic producer and wholesaler of the like product" under 19 U.S.C. § 1677(9)(C) to establish his standing to file a request for review. Compl. ¶¶ 7, 14–15, 76–79, *New Mexico Garlic Growers Coalition and El Bosque Farm v. United States*, No. 17-cv-00146, Doc. 7 (Ct. Int'l Trade June 23, 2017). However, that Mr. Crawford is a garlic grower and thus an interested party under the general definition provided in 19 U.S.C. § 1677(9)(C) does not change the fact that NMGGC did not credibly state "why [NMGGC] desire[d] [Commerce] to review" Harmoni, as required by 19 C.F.R. § 351.213(b)(1). As noted above, the regulation implements the statute providing for administrative reviews, 19 U.S.C. § 1675(a)(1). As Commerce explained:

> after publication of the [preliminary results] substantial evidence was filed on the record, which *has undermined the veracity of all of the NMGGC's submissions to the Department, including the basis for its review request of Harmoni . . . .*

*Final Results I & D Memorandum* at 18, J.A. 9128 (emphasis added); *see also id.* at 23, J.A. 9133 ("[T]he record of this review shows that Mr. Crawford and Mr. Hume have misrepresented critical information *regarding the circumstances surrounding the NMGGC's request to review Harmoni in this and prior administrative reviews.*")

(emphasis added).  The three claims noted above that Commerce found to be misrepresentations all bore on the matter of why NMGGC was requesting review of Harmoni. Further, we note that NMGGC does not challenge the inclusion of the "why" aspect of 19 C.F.R. § 351.213(b)(1). Oral arg. 21:15–22:10; 28:44–58.  Indeed, it is to this component of the regulation that NMGGC points when it argues that Harmoni and the FGPA perpetrated a "sham" before Commerce.  NMGGC Br. 50.  Accordingly, Mr. Crawford's status as a garlic farmer cannot legitimize NMGGC's deceptively filed review.

With this in mind, we are not persuaded that Commerce exceeded its authority when it decided to rescind NMGGC's review of Harmoni as "illegitimate *ab initio*."  As the Court of International Trade noted, we have previously addressed Commerce's inherent authority to protect the integrity of its review proceedings.

In *TKS*, we held that Commerce had the authority to reopen a proceeding when it later discovered evidence of fraud in the original proceeding.  529 F.3d at 1360–61.  We further explained in *Home Products* that the same principle applies when fraud is discovered while an agency proceeding is being challenged in court.  633 F.3d at 1377. ("We hold that, where a party brings to light clear and convincing new evidence sufficient to make a prima facie case that the agency proceedings under review were tainted by material fraud, the [Court of International Trade] abuses its discretion when it declines to order a remand to require the agency to reconsider its decision in light of the new evidence.").  In *Home Products*, we stated that "[w]hile the statute[, 19 U.S.C. § 1675(b),] does not in terms confer such authority, *it is necessarily inherent in the authority of any administrative agency*."  *Id.* (emphasis added).

Accordingly, just as Commerce has inherent authority to protect the integrity of its proceedings by reopening them to address potentially false information, so it has the

inherent authority to defend the integrity of its proceedings in the first instance while they are ongoing. We therefore hold that Commerce did not legally err when it rescinded the review of Harmoni resulting from NMGGC's request.[11]

Finally, we do not agree with NMGGC that the misrepresentations Commerce identified were not made in the review request. Commerce noted Mr. Hume's communications with Chinese exporters that "show[] how Mr. Hume and Chinese garlic exporters . . . have over a period of years, formulated a number of strategies with the ultimate goal that [Commerce] review Harmoni. In the instant review, *these efforts took the form of the NMGGC review request.*" *Final Results I & D Memorandum* at 20, J.A. 9130 (emphasis added). Accordingly, Commerce's findings with respect to NMGGC's misrepresentations regarding the involvement of Chinese exporters undermined not only the statements made in response to Mr. Katz's letter of February 10, 2017 but also the legitimacy of the Coalition from its inception, and the review request itself.[12]

---

[11] Commerce has taken action similar to that taken here in at least one other review. *See, e.g.*, Mem. from Christian Marsh, Deputy Ass't Sec'y for Antidumping & Countervailing Duty Operations, to Paul Piquado, Ass't Sec'y for Import Administration, *Issues and Decision Memorandum for the Final results of the 2010 Admin. Review of the Antidumping Duty Order on Wooden Bedroom Furniture from PRC* (Dep't of Commerce Aug. 20, 2012), 77 ITADOC 51,754 (adopted in 77 Fed. Reg. 51,754).

[12] In addition, as the Court of International Trade noted, Mr. Montoya stated in the review request that he was "handling [the] case independent from any member of this firm for the purpose of avoiding the appearance of a conflict of interest." J.A. 144. This statement was inconsistent with emails in the record showing that Mr. Hume directed Mr. Montoya on the contents of NMGGC's review

We therefore affirm the decision of the Court of International Trade that sustained Commerce's decision to rescind NMGGC's requested review of Harmoni as illegitimate *ab initio*.

V.

As noted, NMGGC makes two arguments relating to Commerce's rescission of the review of Harmoni requested by Harmoni and FGPA. First, it contends that, by allowing a party to request a review and then withdraw the request (resulting in Commerce's rescission of the review), 19 C.F.R. § 351.213(d)(1) violates 19 U.S.C. §§ 1675(a) and 1677f-1. NMGGC Br. 38–49. Second, and relatedly, NMGGC contends that Harmoni and FGPA have engaged in a sham by repeatedly requesting reviews of Harmoni and then withdrawing their requests. NMGGC Br. 50–51. For the following reasons, we decline to address these arguments, however, leaving for another day any consideration of the questions NMGGC has raised about the bases on which Harmoni has avoided Commerce review for a decade.

The Court of International Trade exercised jurisdiction in this case pursuant to 28 U.S.C. § 1581(c). Section 1581(c) gives the Court of International Trade "exclusive jurisdiction of any civil action commenced under [19 U.S.C. § 1516a]." In this case, NMGGC invoked § 1516a(a)(2)(B)(iii) to challenge the *Final Results*. That provision allows "an interested party *who is a party to the proceeding in connection with which the matter arises*" to

request for AR 21, *see NMGGC*, 352 F. Supp. 3d at 1307 (noting Nov. 12, 2015 email from Mr. Hume to Mr. Montoya); *Final Results I & D Memorandum* at 19, J.A. 9129 (quoting Mr. Hume's email to Mr. Montoya: "[i]n your review request for Garlic 21 on behalf of the . . . US domestic interested parties, make the following points . . . .").

"commence an action" to "contest[] any factual findings or legal conclusions upon which" a "final determination" in an administrative review under 19 U.S.C. § 1675 "is based." 19 U.S.C. § 1516a(a)(2)(A), (B)(iii) (emphasis added); *Suntec Indus. Co., Ltd. v. United States*, 857 F.3d 1363, 1367 (Fed. Cir. 2017). "The requirement that the plaintiff have been a party in the administrative review is reinforced by 28 U.S.C. § 2631(c)." *Suntec Indus.*, 857 F.3d at 1367. Section 2631(c) provides that "[a] civil action contesting a determination listed in [19 U.S.C. § 1516a] may be commenced in the Court of International Trade by any interested party *who was a party to the proceeding in connection with which the matter arose*." 28 U.S.C. § 2631(c) (emphasis added); *see* 19 C.F.R. § 351.102(b)(36) (defining a "party to the proceeding" as "any interested party that actively participates, through written submissions of factual information or written argument, in a segment of a proceeding"); *JCM, Ltd. v. United States*, 210 F.3d 1357, 1360 (Fed. Cir. 2000).

In this case, NMGGC initially participated in AR 21 by requesting that Commerce review Harmoni. However, in the *Final Results*, Commerce determined that, because NMGGC lacked credibility, its request for review of Harmoni was "illegitimate *ab initio*." *Final Results I & D Memorandum* at 18, J.A. 9128; *see Final Results*, 82 Fed. Reg. at 27,231. Commerce further stated: "Because we determine that the entirety of the NMGGC's information . . . is unusable, we find that the NMGGC has failed to demonstrate that it is a domestic interested party. As such, there is no valid review request of Harmoni." *Final Results I & D Memorandum* at 23, J.A. 9133. On appeal, the Court of International Trade affirmed the *Final Results*. *NMGGC*, 352 F.3d at 1312. And today, we in turn affirm the decision of the Court of International Trade. Thus, through Commerce's determination in the *Final Results* and the subsequent affirmance of that determination by the Court of International Trade and this court,

NMGGC's participation in AR 21 has been rendered null and void. Thus, NMGGC was not a "party to the proceeding." NMGGC therefore stands in the shoes of a party who failed to participate in the administrative review. For this reason, we will not entertain its claim that Commerce erred in rescinding the review of Harmoni that was requested by Harmoni and FGPA.

Finally, by its own misconduct, NMGGC disqualified itself from obtaining a review of Harmoni pursuant to 19 C.F.R. § 351.213(b)(1). The ultimate goal of NMGGC's attack on § 351.213(d) and Harmoni's and FGPA's practice of requesting reviews and then withdrawing those requests, however, is to obtain precisely what NMGGC has forfeited: review of Harmoni. By entertaining NMGGC's arguments now we effectively would be nullifying our affirmance of the decision of the Court of International Trade sustaining the *Final Results*. That is something we decline to do.

## CONCLUSION

For the foregoing reasons, the decision of the Court of International Trade that sustained Commerce's rescission of the administrative review of Harmoni in AR 21 is affirmed.

## **AFFIRMED**

### COSTS

Each party shall bear its own costs.